FILED
2016 Jun-30  PM 09:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DONNA F. HUDSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:14-CV-01747-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Donna Hudson seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Hudson's claims for a period of disability and disability insurance benefits and supplemental security income.  After careful review, the Court remands the Commissioner's decision for further administrative proceedings.

## I.    PROCEDURAL HISTORY

Ms. Hudson applied for a period of disability and disability insurance benefits and supplemental security income on May 24, 2010.  (Doc. 6-6, pp. 2-7). Ms. Hudson alleges that her disability began on February 25, 2010.  (Doc. 6-6, pp.

2, 4).  The Commissioner initially denied Ms. Hudson's claims on July 15, 2010. (Doc. 6-5, pp. 5-9).  Ms. Hudson requested a hearing before an Administrative Law Judge (i.e., an ALJ).  (Doc. 6-5, p. 12).  The ALJ issued an unfavorable decision on February 3, 2012.  (Doc. 6-4, pp. 2-4).[1]  On July 25, 2014, the Appeals Council declined Ms. Hudson's request for review (Doc. 6-3, pp. 2-5), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 405(g) or § 1383(c).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited.   "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "decide the facts anew,

---

[1] Ms. Hudson previously filed applications for disability benefits and supplemental security income in 2008. An ALJ denied these claims on February 24, 2010. (Doc.  6-4, pp. 2-17).  The Appeals Council denied review on March 22, 2011.  (Doc. 6-4, pp. 32-34).  Ms. Hudson does not challenge these administrative proceedings.  (Doc. 13, p. 2, n. 2).

reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's decision, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

3

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Hudson has not engaged in substantial gainful activity since February 25, 2010, the alleged onset date.  (Doc. 6-3, p. 12). The ALJ determined that Ms. Hudson suffers from the following severe impairments:   degenerative disc disease with muscle spasms, chronic pain syndrome, and depressive disorder.  (Doc. 6-3, p. 13).  The ALJ found that Ms. Hudson suffers from the following non-severe impairments:  migraine headaches and hyperthyroidism.  (Doc. 6-3, p. 13).  Based on a review of the medical evidence, the ALJ concluded that Ms. Hudson does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 6-3, p. 13).

Given Ms. Hudson's impairments, the ALJ evaluated Ms. Hudson's residual functional capacity or RFC.  The ALJ determined that Ms. Hudson has the RFC to perform:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can sit for a total of 4 hours in an 8 hour workday and stand and/or walk for up to 1 hour each at a time with a maximum of 2 hours each in an 8 hour workday with the ability at the end of each hour to change positions for 1-2 minutes. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She should never climb on ladder, ropes, or scaffolds and should avoid hazardous machinery and unprotected heights. The claimant would be limited to non-intensive contact with the public and changes to the workplace should be infrequent

and well explained.

 (Doc. 6-3, p. 14).  Based on this RFC, the ALJ concluded that Ms. Hudson is not able to perform her past relevant work as a census taker, flagger, housekeeper or sewing machine operator.   (Doc. 6-3, p. 19).   Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Hudson can perform, including surveillance monitor, eye glass lens inserter, and cutter and paster.  (Doc.  6-3, pp. 19-20).  Accordingly, the ALJ determined that Ms. Hudson has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, p. 20).

## IV.   ANALYSIS

Ms. Hudson argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly consider the opinions of her treating physician, Dr. Farouk A. Raquib.  The Court agrees.[2]

An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's own records.  *See Winschel*, 631 F.3d at 1179.  An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41

---

[2] Ms. Hudson also argues that the ALJ failed to properly evaluate her credibility and posed an incomplete hypothetical question to the vocational expert during the administrative hearing. (Doc. 13, pp. 37-49).  Because the Court remands this case for further proceedings based on Ms. Hudson's first argument, the Court does not address Ms. Hudson's second and third arguments.

(11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159.

The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (internal quotation and citation omitted); *Winschel*, 631 F.3d at 1176 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F. 2d, 735 (11th Cir. 1981)).

The ALJ found that Ms. Hudson's depressive disorder "causes mild limitations in her daily activities and social functioning . . ." and explained that "[i]n so concluding, the undersigned notes that the record contains some inconsistencies concerning the claimant's daily activities." (Doc. 6-3, p. 16). The ALJ pointed to Dr. Raquib's deposition testimony that Ms. Hudson suffers from "disabling depression and anxiety" and discussed aspects of the record that the ALJ believed contradicted Dr. Raquib's testimony. (*Id.*). Specifically, the ALJ

stated that "[t]reatment records [] do not show that the claimant was ever recommended for outpatient mental health treatment or that the claimant was noted to have mental health issues at any of her emergency room visits." (*Id.*).

The administrative record does not support the ALJ's assertion. Dr. Alan D. Blotcky, a psychologist, examined Ms. Hudson on November 17, 2009. Dr. Blotcky observed that Ms. Hudson "seemed extremely depressed." (Doc. 6-12, p. 103). Dr. Blotcky noted that Ms. Hudson achieved a score of 42 on the Beck Depression Inventory, indicating the presence of severe depression. (Doc. 6-12, p. 103). Dr. Blotcky reported: "Ms. Hudson is struggling with major depressive disorder, single episode, severe without psychosis. Her family physician is treating her with Buspar." (Doc. 6-12, p. 104). Dr. Blotcky stated: "Ms. Hudson must be involved in psychiatric treatment for her affective illness. She needs to be under the care of a psychiatrist and psychologist. This treatment should include a combination of medication and individual counseling." (*Id.*). Dr. Blotcky also found, based on the results of the WAIS-III that he administered, that "Ms. Hudson's intellectual abilities fall in the Mildly Retarded" range." (*Id.*). Based on these findings, Dr. Blotcky concluded that Ms. Hudson's prognosis was "poor to very poor because of the combination of a serious affective illness and mental retardation." (Doc. 6-12, p. 105). The ALJ did not discuss Dr. Blotcky's opinion in her decision.

The ALJ may have implicitly considered and rejected Dr. Blotcky's opinion – in fact the ALJ wrote that she "carefully read and considered all of the evidence regardless of whether it is specifically cited in this opinion" -- but "without clearly articulated grounds for such a rejection," the Court "cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1176 ("[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.") (internal quotation marks and citation omitted).   Accordingly, the Court remands this case to the Commissioner. On remand, the ALJ must consider and explicitly explain the weight accorded to Dr. Blotcky's assessment.   *Id.*; *see also McClurkin v. Social Sec. Admin.*, 625 Fed. Appx. 960, 962 (11th Cir. 2015) ("[T]he ALJ's failure to explain his grounds for discounting Dr. Teschner's report is reversible error, even though Dr. Teschner was not a treating physician.").[3]

---

[3] The Court recognizes that Dr. Blotcky is not a treating physician; he is a one-time examining psychologist.  Nevertheless, Dr. Blotcky's opinion is at odds with the ALJ's assertion that Ms. Hudson had not been "recommended for outpatient mental health treatment."  The record also is at odds with the ALJ's statement that Ms. Hudson was not "noted to have mental health issues at any of her emergency room visits."  An emergency room record from July 2007 reflects that Ms. Hudson was taking Paxil.  (Doc. 6-9, p. 70).  An emergency room record from August 2007 states that Ms. Hudson has a history of depression.  (Doc. 6-9, p. 82).

## V.    CONCLUSION

For the reasons discussed above, the Court remands the decision of the Commissioner for further administrative proceedings consistent with the Court's memorandum opinion.

**DONE** and **ORDERED** this June 30, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE